UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH TORRENCE,

Plaintiff,

v.

Case No. 25-cv-12078
HON. MARK A. GOLDSMITH

FORD MOTOR COMPANY,

Defendant.
______________________________/

**OPINION & ORDER**
**GRANTING IN PART DEFENDANT'S MOTION TO DISMISS (Dkt. 14) AND DENYING PLAINTIFF'S MOTIONS FOR SANCTIONS (Dkts. 15, 20)**

Plaintiff Joseph Torrence, a former Ford Motor Company employee, filed this lawsuit alleging that Defendant Ford Motor Company committed age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. and Elliott-Larsen Civil Rights Act (ELCRA) Mich. Comp. Laws § 37.2101 et seq. Before the Court is Ford's motion to dismiss (Dkt. 14) and Torrence's motions for sanctions (Dkts. 15, 20). For the reasons that follow, the Court grants in part Ford's motion and denies both of Plaintiff's motions for sanctions.[1]

## I. BACKGROUND

Torrence's complaint alleges the following facts. Torrence, age 62, worked at Ford for approximately 25 years in a variety of positions. Am. Compl. ¶¶ 8–10 (Dkt. 13). At the time the

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion to dismiss, the briefing includes Torrence's response (Dkt. 18) and Ford's reply (Dkt. 21). In addition to the motions for sanctions, the briefing also includes Ford's responses (Dkts. 19, 22).

events occurred giving rise to this complaint, Torrence was working as a program manager. Id. at ¶ 10. Throughout his time at Ford, from 2000 to mid-year 2023, Torrence consistently received excellent performance reviews, including "Top Achiever" reviews. Id. ¶¶ 11–14. However, for his 2023 year-end review, without receiving any prior negative feedback, Torrence "received a significantly downgraded performance review." Id. ¶ 15. Torrence was "shocked" by this review and discussed it with his supervisor, People Leader John Roth. Id. ¶ 16. Roth informed Torrence that everyone received the same low ratings and told Torrence that he had been directed to give those poor ratings but did not agree with them. Id. ¶¶ 17–18.

In May 2024, Ford Global Director Kevin Kerr held a one-on-one meeting with Torrence. Id. ¶ 19. At the meeting, Kerr told Torrence that he knew Torrence was upset about the performance review and that Kerr received the same poor ratings that Torrence had received. Id. ¶¶ 20–21. He also stated that "[t]here will not be a repeat this year" and Torrence would be fairly evaluated in the next evaluation period and specifically acknowledged that there were no issues with Torrence's performance. Id. ¶¶ 22–23. In June of 2024, Torrence was able to view his mid-year performance review online, which rated his performance as satisfactory or better. Id. ¶ 24.

In August 2024, a colleague, Scott Roff, approached Torrence and told him that he received a voicemail on his Ford-issued phone that was not meant for Roff. Id. ¶¶ 25, 28. Roff played the recording for Torrence. Id. ¶ 35. The voicemail recorded a conversation between Roth and another colleague, Roger Ibach. Id. ¶ 33. In the recorded conversation, Roth can be heard saying "I hate this f***ing place and what they make me do" and that Josh Halliburton, the Executive Director of Quality at Ford, was making him put Torrence and Joe Intravaia, a peer roughly the same age as Torrence, on performance enhancement plans to force them to retire. Id. ¶¶ 36, 38–40. During the recording, Ibach asked Roth if either Torrence or Intravaia warranted a performance

enhancement plan. Id. ¶ 41. Roth responded that they did not and that Haliburton "just wants them gone" and that "I can't believe [Haliburton] is making me do this . . . Joe Intravia has 32 years and Torrence has 25." Id. ¶¶ 42–44.

Later that day, after hearing the recording, Torrence disclosed the contents of the phone call to several senior employees and Intravaia. Id. ¶¶ 45–48.

In September 2024, Torrence met with Roth to discuss his mid-year performance review. Id. ¶ 49. Roth told Torrence that he was receiving a poor rating. Id. ¶ 50. During the meeting, Torrence repeatedly asked Roth, "Is that your opinion of my performance?" to which Roth responded, "It's a consensus." Id. ¶ 51. Torrence informed Roth that he knew about Roth's conversation with Ibach and that he would be filing an age discrimination complaint with human resources. Id. ¶¶ 52–53. Around this time, Torrence noticed that his satisfactory performance review from June 2024 had disappeared from Ford's system and been replaced with another poor review. Id. ¶ 54.

Torrence then filed a formal age discrimination complaint with Ford human resources, and Ford investigated the complaint, interviewing Torrence and other employees. Id. ¶¶ 57–59.

In February 2025, Roth gave Torrence another poor performance review. Id. ¶ 64. Torrence alleges that this was part of the scheme to get him to resign or fired and was issued in retaliation for his age discrimination complaint. Id. ¶¶ 65–66. In March 2025, Ford notified Torrence that its investigation into his complaint had concluded, but Torrence was not provided with any specifics regarding the investigation or findings. Id. ¶¶ 67, 69.

Torrence was involuntarily separated from Ford in April 2025. Id. ¶ 70.

## II. ANALYSIS[2]

Invoking 29 U.S.C. § 621 and Mich. Comp. Laws § 37.2101, Torrence alleges that Ford discriminated against him on the basis of his age and retaliated against him for filing an age discrimination complaint with human resources. Am. Compl. ¶¶ 87– 110. In its motion to dismiss, Ford argues that Torrence has failed to state a claim of age discrimination and fails to state a claim of retaliation. Mot. at 6–13.

### A. Motion to Dismiss (Dkt. 14)

#### 1. Age Discrimination Claim

Torrence brings his claims of age discrimination pursuant to the ADEA and ELCRA. The manner of adjudication is similar under both statutes: unlawful discrimination may be shown by way of direct or circumstantial evidence, the latter of which is typically analyzed under the familiar McDonnell Douglas burden-shifting framework. Tilley v. Kalamazoo Cnty. Road Comm'n, 777 F.3d 303, 307–308 (6th Cir. 2015). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of age discrimination by demonstrating: "1) that he was a member of a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class." Geiger v. Tower Auto., 579 F.3d 614, 622 (6th Cir. 2009) (punctuation modified).[3]

---

[2] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

[3] While a plaintiff need not "show that he can prove a prima facia case under the framework" to survive a motion to dismiss, the "framework creates a backdrop against which the Court can assess plausibility." Southall v. Ford Motor Co., 645 F. Supp. 3d 826, 834 (S.D. Ohio 2022).

Ford argues that Torrence has not pled a viable age discrimination claim because he has not pled that (i) he was qualified for the position, and (ii) that he was replaced by a younger worker or that a similarly situated younger employee was treated more favorably than he was. Mot. at 6–7. The Court, therefore, confines its analysis to these factors, as Ford does not contest the other two.

Torrence alleges several facts that indicate that he was qualified for his position. For example, his complaint states that he had been receiving consistently excellent reviews for over twenty years, that he received several "Top Achiever" reviews, and that two Ford executives stated that there were no issues with his performance. Am. Compl. ¶¶ 9–14, 23, 41–42. Ford argues that despite these claims, the fact that Torrence received poor reviews starting in 2023 undermines the notion that he was qualified for his position. Mot. at 7. However, at the heart of Torrence's claim, is the assertion that the 2023 and subsequent poor reviews were unmerited and fraudulent. Torrence, therefore, has alleged sufficient facts to indicate that he was qualified for his position.

Ford argues that Torrence does not identify any younger, similarly situated employees who allegedly received better treatment apart from the "conclusory statement" that "Plaintiff was replaced by a significantly younger individual." Mot. at 8 (quoting Am. Compl. ¶ 98). Torrence, however, is not required to identify a comparator by name at this pleadings stage of the case. Horne v. Pentastar Aviation, LLC, No. 23-11439, 2024 WL 1607017, *9 (E.D. Mich. Apr. 12, 2024) (punctuation modified).

Apart from these factors, Ford argues that the complaint fails to "connect the dots between" Torrence's termination and his age. Mot. at 10. The complaint, however, alleges several facts pertaining to Torrence's age and forced retirement. For example, Torrence identifies a peer roughly the same age, Intravaia, who was also targeted as part of the same scheme. Am. Compl.

¶¶ 38–44. Torrence alleges that his boss explicitly mentioned his "25 years" and Intravaia's "32 years" at Ford. While this mention alone may not be enough to establish a prima facia case of age discrimination, taken together with the other alleged facts it is enough to survive a motion to dismiss at the pleading stage. See Scott v Potter, 182 F. App'x 521, 526 (6th Cir. 2006) (" '[Y]ears of service' is conceptually distinct from 'age.' While both terms apply to many of the same individuals in various contexts, the overlap is not perfect.").

Therefore, the Court denies Ford's motion to dismiss as to Torrence's age discrimination claims.

**2. Retaliation Claim**

To state a retaliation claim under the ADEA, the plaintiff must plead facts showing that (i) the plaintiff engaged in protected activity; (ii) the defendant knew of that activity; (iii) the defendant took an adverse action against plaintiff; and (iv) the adverse action was caused or motivated by the protected activity. Blizzard v. Marion Tech Coll., 698 F.3d 275, 288 (6th Cir. 2012). Ford solely contests the fourth element, whether the protected activity motivated or caused the adverse action.

Ford argues that Torrence's retaliation claim fails because none of his factual allegations suggest that his termination was causally connected to his HR complaint. Mot. at 11. Additionally, Ford asserts that because nearly seven months passed between the filing of the internal complaint—the alleged protected activity—and Torrence's termination in April 2025—the alleged adverse action—the gap between the two is too wide to establish causation by temporal proximity alone. Id. at 11–12.

Torrence responds that he is not relying solely on the temporal proximity as measured between his age discrimination complaint and his termination; he alleges the adverse actions

continued after his protected activity, culminating in his termination. See Kyle-Eiland v. Neff, 408 F. App'x 933, 941 (6th Cir. 2011) (agreeing that a negative performance evaluation may constitute an adverse employment action where the employee can point to a tangible employment action he suffered, or was in jeopardy of suffering, because of the downgraded evaluation").

Nevertheless, even if the Court were to accept Torrence's theory, that would leave five months between the protected activity and the subsequent poor review as opposed to the seven months between the protected activity and the termination. Torrence has provided no case, nor has the Court located one, where a court found temporal proximity with a comparable gap that permitted an inference of retaliation. Cf. Cooper v. City of N. Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986) (stating that plaintiff being "discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation"); George v. Youngstown State Univ., 966 F.3d 446, 460 (6th Cir. 2020) (maintaining that temporal proximity may be sufficient where "the adverse employment action is . . . taken just days or weeks from when the employer learns of the employee's protected activity").

The Court grants Ford's motion to dismiss as to Torrence's retaliation claim.

**B. Motions for Sanctions (Dkts. 15, 20)**

Despite stating that he wishes to avoid "unnecessary motions practice," Torrence brings two separate motions for sanctions—that appear to be exactly the same—except that one asks for sanctions pursuant to 28 U.S.C. § 1927 and the other asks for sanctions pursuant to Federal Rule of Civil Procedure 11. See § 1927 Mot. at PageID.98; Rule 11 Mot. at PageID.293. Torrence argues that his case is "straightforward" and that Ford's second motion to dismiss is "harassing and frivolous." § 1927 Mot. at PageID.98–99; Rule 11 Mot. at PageID.293–294. The Court denies both motions.

Under § 1927, attorney fees may be awarded where an attorney "so multiplies the proceedings in any case unreasonably and vexatiously." Sanctions may be appropriate when an attorney knows or reasonably should know that the claim pursued is frivolous, or that the attorney's litigation tactics will "needlessly obstruct the litigation of nonfrivolous claims." Jones v. Cont'l Corp., 789 F. 2d 1225, 1230 (6th Cir. 1986). The Court need not find bad faith on the part of the sanctioned party. Dixon v. Clem, 492 F.3d 665, 679 (6th Cir. 2007); see also In re Ruben, 825 F.2d 977, 983– 984 (6th Cir. 1987) (noting that "a relaxed standard" is applicable to § 1927 sanctions, as a court may assess fees against an attorney "despite the absence of any conscious impropriety") (punctuation modified). Instead, sanctions under § 1927 "require a showing of something less than subjective bad faith, but something more than negligence or incompetence." Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006).

Rule 11 states that an attorney who presents written motions to a court is deemed to have made certain representations to the best of the attorney's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). These representations include that a motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that legal contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1)–(2).

As Ford identifies, Torrence cites no authority stating that a defendant filing a second motion to dismiss, after a plaintiff files an amended complaint, is sanctionable under § 1927 or Rule 11. Resp. to § 1927 Mot. at PageID.259–260; Resp. to Rule 11 Mot. at PageID.381. The Court is aware of none. Further, because the Court granted Ford's motion to dismiss, in part, it cannot be argued that Ford's second motion to dismiss "multiplies the proceedings in any case

unreasonably and vexatiously" or that it was filed to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." § 1927; F. R. Civ. P. 11(b). Therefore, both sanctions motions are denied.

## III. CONCLUSION

For the reasons explained above, the Court denies Ford's motion to dismiss with respect to the discrimination claims but grants Ford's motion to dismiss with respect to the retaliation claim (Dkt. 14). The Court denies Plaintiff's motions for sanctions (Dkts. 15, 20).

**SO ORDERED.**

Dated: August 24, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 24, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager